UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY BLACK,

       Plaintiff,                              Hon. Ellen S. Carmody

v.                                                 Case No. 1:15-CV-438

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  On July 8, 2015, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on her alleged disability onset date. (PageID.328). She successfully completed high school and worked previously as a home health aide nurse assistant. (PageID.178-79). Plaintiff applied for benefits on August 8, 2012, alleging that she had been disabled since July 9, 2011, due to diabetes, anxiety with panic attacks, depression with suicidal ideation, neuropathy, sciatica, arthritis of the knees, high cholesterol, heart problems, poor memory and concentration, and trouble standing, bending, and sitting. (PageID.328-44, 362). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.236-326). On August 14, 2013, Plaintiff appeared before ALJ Edward Studzinski with testimony being offered by Plaintiff and a vocational expert. (PageID.185-231). In a written decision dated December 23, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.168-80). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.19-24). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2012. (PageID.170). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) obesity; (2) left shoulder tendinopathy; (3) internal derangement of the left knee; and (4) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (PageID.170-73).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) she cannot stand/walk for longer than 15 minutes at any one time; (2) she can occasionally climb ramps/stairs, but can never climb ladders, ropes, or scaffolds; (3) she can occasionally balance, stoop, kneel, crouch, and crawl; (4) she cannot use her left upper extremity to reach in any direction fully extended for more than 75 percent of her full range of motion; (5) she can only occasionally reach overhead with her left upper extremity, while not bearing more than minimal weight; (6) she must avoid concentrated exposure to extreme cold, extreme wetness, and excessive vibration; (7) she can never drive or operate moving machinery; (8) she cannot work at unprotected heights, around exposed flames, or around unguarded large bodies of water; (9) she must avoid concentrated exposure to unguarded hazardous machinery; (10) she is limited to simple, routine, and repetitive tasks that require only simple judgment and simple decision making; (11) she is limited to work with only minor or occasional changes in the work setting; (12) she cannot work in a direct public service capacity, but can tolerate brief and superficial interaction with the general public which is incidental to her primary job duties; and (13) she is limited to brief and superficial interaction with supervisors

and co-workers. (PageID.173). The ALJ further concluded that Plaintiff requires a sit/stand option as follows: (1) after sitting for 60 minutes, she must be allowed to stand/walk for up to 5 minutes before sitting for another 60 minutes; and (2) after standing/walking for 15 minutes she must be allowed to sit for 5 minutes before standing/walking for another 15 minutes, but must not be off-task. (PageID.173).

The ALJ found that Plaintiff cannot perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 3,200 jobs in the "Michiana" area and approximately 505,000 jobs nationwide, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.220-27). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social*

*Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.**         **The ALJ Properly Assessed Dr. MacCart's Opinion**

Plaintiff's treating physician, Dr. John MacCart, opined that Plaintiff was impaired to an extent far greater than recognized by the ALJ.  The ALJ, however, afforded "little weight" to Dr. MacCart's opinions.  Plaintiff argues that she is entitled to relief because the ALJ failed to articulate good reasons for discounting her treating physician's opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

On April 16, 2013, Dr. MacCart reported that during an 8-hour workday Plaintiff can (1) sit for 15 minutes at one time and "about 4 hours" total and (2) stand/walk for 15 minutes at one time and "about 2 hours" total. (PageID.483). The doctor reported that Plaintiff also required a sit-stand option. (PageID.483). The doctor reported that Plaintiff can: (1) occasionally lift less than 10 pounds; (2) rarely lift 10 pounds, and (3) never lift 20 pounds. (PageID.484). The doctor also reported that "on average," Plaintiff would, as a result of her impairments, be absent from work "about two days per month." (PageID.485). In a report completed September 11, 2013, Dr. MacCart offered similar opinions regarding Plaintiff's ability to function. (PageID.552-55).

The ALJ discounted Dr. MacCart's opinions as inconsistent with the medical record. Specifically, the ALJ noted that:

> Dr. MacCart's treatment records show that [Plaintiff's] knee and shoulder both improved with medication and therapy. She also received little follow-up. There is no support at all for the conclusion that she would miss two days of work per month. There are at times months between appointments. [Dr. MacCart] is also not [Plaintiff's] treating orthopedist, but rather a family physician.

(PageID.177).

As detailed above, the ALJ articulated a rather restrictive RFC to account for Plaintiff's various impairments. As the ALJ observed, Dr. MacCart's treatment notes do not support the opinion that Plaintiff is more restricted than reflected in his RFC. (PageID.443-70, 486-510). For example, the doctor reported that Plaintiff exhibited "full range of motion" in her left knee with only "mild pain." (PageID.452). Subsequent x-rays of Plaintiff's left shoulder revealed "minimal abnormalities." (PageID.495). Treatment notes indicate that Plaintiff's pain is relieved with medication. (PageID.506). Treatment notes from Plaintiff's other care providers likewise support the ALJ's RFC assessment. (PageID.471-76, 515-51). For example, a psychological examination revealed that Plaintiff could perform work consistent with her RFC. (PageID.471-76). Treatment notes by Dr. Daniel Sohn indicate that while Plaintiff experiences "limited shoulder range of motion," she has only "mild" rotator cuff tendinosis and "good" grip strength and muscular function. (PageID.515). X-rays of Plaintiff's knee likewise do not support the argument that Plaintiff is more limited than reflected by the ALJ's RFC assessment. (PageID.513). In sum, the ALJ's decision to afford "little weight" to Dr. MacCart's opinions is supported by substantial evidence.

**II.        The ALJ's RFC is Supported by Substantial Evidence**

Plaintiff next argues that because the ALJ's RFC assessment does not mirror the opinion or findings of any medical expert such is legally deficient.  Plaintiff has identified no authority to support this position.  While Plaintiff has cited to two Sixth Circuit decisions, neither supports Plaintiff's argument.

In *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009), the Sixth Circuit held that an ALJ could not reject a treating physician's opinion based solely on the finding that "another physician had reached the opposite conclusion."  *Id.* at 266.  In *Cole v Astrue*, 661 F.3d 931 (6th Cir. 2011), the Sixth Circuit held that where an ALJ discounted a treating physician's opinion based upon an inaccurate assessment of the claimant's reported activities, such violated the Treating Physician Rule.  *Id.* at 939.  These decisions merely reiterate the uncontroversial rule that the ALJ's decision to discount the opinion of a treating physician must be supported by substantial evidence.  Neither decision, however, supports Plaintiff's argument that the ALJ's RFC determination must be consistent with the opinions or findings of any medical examiner or care provider.

Moreover, as Defendant correctly notes, the Sixth Circuit has rejected Plaintiff's argument.  *See, e.g., Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir., Sept. 5, 2013) ("the Commissioner has final responsibility for determining an individual's RFC. . .and to require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled") (quoting Social Security Regulation 96-5p).  Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3). A judgment consistent with this opinion will enter.


Date:  May 24, 2016                                                       /s/ Ellen S. Carmody
                                                                                         ELLEN S. CARMODY
                                                                                         United States Magistrate Judge